[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-11182
Non-Argument Calendar

_____

D. C. Docket No. 04-20711-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELBA NUBIA PAZ-BARONA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 27, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Elba Nubia Paz-Barona appeals her 60-month sentence for the importing

100 grams or more of heroin in violation of 21 U.S.C. §§ 952(a) and 960(b)(2). We find that the district court did not clearly err in finding Paz-Barona ineligible for safety-valve relief, pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 (2004), and so imposing the statutory mandatory minimum sentence for her offense. Accordingly, we AFFIRM.

## I. BACKGROUND

Paz-Barona pled guilty, pursuant to a plea agreement with the government, to importing 100 grams or more of heroin. In a plea agreement, she and the government agreed that the government, pursuant to U.S.S.G. § 5C1.2 ("safety-valve"), would recommend to the district court that Paz-Barona be sentenced within the calculated guideline range without regard to the statutory mandatory minimum sentence for her offense, "provided that . . . not later than the time of the sentencing hearing [Paz-Barona] provide[d] to the [government] a written statement truthfully setting forth all information and evidence she ha[d] concerning the offense . . . that [was] part of the same course of conduct or of a common scheme or plan as charged in the indictment." R1-14 at 3. At Paz-Barona's plea hearing, the government and Paz-Barona's counsel both stated that they believed the safety-valve provision was likely to apply. R2 at 7. Nevertheless, the court informed Paz-Barona that, unless the safety-valve provision applied, she would be

2

subject to "a mandatory minimum sentence of five years." Id. Paz-Barona said that she understood the possible penalties. Id. at 7-8.

According to the presentence investigation done by the probation office, Paz-Barona and her sister had arrived at the Miami International Airport on a flight from Cali, Colombia. During an inspection by U.S. Customs and Border Protection officials, an x-ray revealed that Paz-Barona had foreign objects in her lower intestine. The officials transported Paz-Barona to a hospital where she expelled nine pellets that contained 271.5 grams of heroin.

After her arrest, Paz-Barona provided a written acceptance of responsibility. According to this statement, she and her sister were contacted by some people she knew, who knew of her difficult financial situation, and, after some discussion, got her to agree to smuggle the drugs into the country. See R-3 at 4, 7. Based on Paz-Barona's offense conduct, the probation officer assigned a base offense level of 26, pursuant to U.S.S.G. § 2D1.1(c)(7). This was decreased by three, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), for her acceptance of responsibility and timely notice of her intent to plead guilty. The probation office also determined, however, that she had not met the requirements for application of the safety-valve provision. With an adjusted offense level of 23, and a criminal history category of I, Paz-

Barona's resulting guideline range was 46 to 57 months imprisonment, but the statutory mandatory minimum was five years.

Prior to the sentencing hearing, in response to the finding that Paz-Barona had not met the requirements for application of the safety-valve provision, her counsel provided a letter to the government purporting to set forth all the information Paz-Barona had concerning her offense. This letter was also appended to Paz-Barona's filed objections to the presentence investigation report ("PSI"). See R1-20 Attachment. The letter began by describing how Paz-Barona and her sister had gone to the airline office to change their flight date due to hurricanes in Florida. Id. at 1. The letter then stated that:

> Upon leaving the American Airlines office, two (2) individuals approached the sisters from behind, told them not to turn around and stuck a hard object in their backs. The men demanded them to continue to walk. They told the sisters they knew where they lived and how many children they had and that if they did not bring the packages that they were going to hand them to New York, they or their children would be killed. The men told the sisters that when they arrived in New York their representative would retrieve the pellets from the sisters at their apartment.

Id. According to Paz-Barona's counsel, the government did not agree that the letter met the requirements for the application of the safety-valve provision. Paz-Barona also argued that the PSI ought to have recommended a downward

4

departure, pursuant to U.S.S.G. § 5K2.12, because, she asserted, she had smuggled the heroin as a result of coercion and duress.

At the sentencing hearing, Paz-Barona renewed her objection with regard to the application of the safety-valve. In support of her argument, Paz-Barona testified to the circumstances under which she smuggled heroin into the United States, specifically stating that "[i]t was a person that [she] did not know who offered [her], due to the fact that this person realized the financial situation that [she and her sister] were undergoing, this person offered [she and her sister] to bring the drugs, so [she and her sister] accepted." R3 at 5. Paz-Barona's counsel then stated that, because he did not believe that this testimony was "substantive enough . . . for the Court to obtain a clear picture," he and Paz-Barona would rely on the letter earlier submitted to the government. Id. at 5-6.

The court denied Paz-Barona's request for application of the safety-valve provision, explaining that, "[b]ased on the discrepancies between the statements and the failure to explain in any detail what happened or give the [g]overnment all the information she has about the offense[,] I find that aspect of the safety-valve requirement has not been met." Id. at 7. The court concluded that Paz-Barona's offense level was 23, her criminal history category was I, and the applicable statutory mandatory minimum sentence was 60 months. The court then asked the

5

parties if there was any argument to be made that it had "any discretion on this."

Id. Paz-Barona's counsel replied,

> [t]he only discretion you would have is under a [Fed. R. Crim. P.] 35 type of situation, which I would request the Government make at this time as a result of Miss Paz Barona supplying them with the letter dated February eighth, 2005, and seek a reduction in sentence via substantial assistance motion by the Government.

Id. at 7-8. The government declined to file a Rule 35 motion. The court then sentenced Paz-Barona to 60 months imprisonment, to be followed by four years supervised release.

On appeal, Paz-Barona argues that she provided the government with complete, truthful information concerning her offense, and so the district court erred in failing to apply the safety-valve provision in imposing her sentence because she had met all the requirements. She also contends that her sentence is excessive and unreasonable and, further, that the court erred in failing to grant a downward departure under § 5K2.12. Finally, she asserts that the court also erred in failing to consider the factors set forth in 18 U.S.C. § 3553(a).

## II. DISCUSSION

"When reviewing the denial of safety-valve relief, we review for clear error a district court's factual determinations," and "[w]e review de novo the court's

legal interpretation of the statutes and sentencing guidelines." United States v.

Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004) (per curiam).

Where a defendant is convicted under 21 U.S.C. § 960, the district court

"shall impose a sentence pursuant to [the sentencing guidelines] without regard to

any statutory minimum sentence, if the court finds at sentencing" that five

enumerated factors are present. 18 U.S.C. § 3553(f). "This provision, as well as

U.S.S.G. § 5C1.2 which employs the same list of factors, is commonly called the

'safety valve.'" Johnson, 375 F.3d at 1302. As the parties concede, the fifth factor

under these provisions is the only one at issue here. The fifth factor provides:

> not later than the time of the sentencing hearing, the defendant has
> truthfully provided to the Government all information and evidence
> the defendant has concerning the offense or offenses that were part of
> the same course of conduct or of a common scheme or plan, but the
> fact that the defendant has no relevant or useful other information to
> provide or that the Government is already aware of the information
> shall not preclude a determination by the court that the defendant has
> complied with this requirement.

18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5).

We have determined that this fifth factor "is a 'tell-all' provision: to meet its

requirements, the defendant has an affirmative responsibility to 'truthfully disclose

to the government all information and evidence that he has about the offense and

all relevant conduct.'" Johnson, 375 F.3d at 1302 (citation omitted). "The burden

is on the defendant to come forward and to supply truthfully to the government all

7

the information that [s]he possesses about [her] involvement in the offense, including information relating to the involvement of others and to the chain of the narcotics distribution." United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997).

Here, the record reflects that Paz-Barona submitted two inconsistent statements with regard to how she became involved in the heroin smuggling venture. In neither account did she provide any information concerning the individuals who recruited her participation, nor did she explicitly state that she did not have any such information. The district court took note of these inconsistencies and found that, "[b]ased on the discrepancies between the statements and the failure to explain in any detail what happened or give the [g]overnment all the information she ha[d] about the offense[,] . . . that aspect of the safety-valve requirement has not been met." R3 at 7. Based on the record, it cannot be said that the district court clearly erred in making this determination. See Johnson, 375 F.3d at 1302.

Because we have concluded that the district court did not clearly err in denying Paz-Barona's request for application of the safety valve, we need not address her arguments that the district court erred (1) in failing to apply a downward departure pursuant to U.S.S.G. § 5K2.12; (2) in failing to consider the

8

§ 3553(a) factors; or (3) in imposing an unreasonable sentence. Barring safety-valve relief or a Rule 35 "substantial assistance" motion, the sentencing court remains bound by the statutory mandatory minimum provided by 21 U.S.C. § 960. See United States v. Simpson, 228 F.3d 1294, 1302-03 (11th Cir. 2000); see also United States v. Shelton, 400 F.3d 1325, 1333 n.10 (11th Cir. 2005) (confirming that statutory mandatory minimums remain binding post-Booker). Paz-Barona's guidelines range, even without a downward departure, was already below that mandatory minimum, thus no downward departure could have made any difference. See Cruz, 106 F.3d at 1555 n.3.

## III. CONCLUSION

Paz-Barona appeals her 60-month sentence for the importation of 100 grams or more of heroin. We find the district court did not clearly err in declining to apply the safety-valve provisions to her sentence, or in imposing the statutory mandatory minimum sentence provided for her offense. Accordingly, we **AFFIRM** Paz-Barona's sentence.