[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12326
Non-Argument Calendar

_____

D. C. Docket No. 06-00279-CR-T-17TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE ENRIQUE VALENCIA VERGARA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 7, 2008)

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Jorge Enrique Valencia-Vergara appeals his conviction and sentence for conspiracy to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States and possession with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, both in violation of 46 App. U.S.C. § 1903(a),(g),(j),[1] and 21 U.S.C. § 960(b)(1)(B)(ii). Valencia-Vergara asserts three issues on appeal, which we address in turn. After review, we affirm Valencia-Vergara's conviction and sentence.

## I.

Valencia-Vergara asserts the district court erred in denying his motion to dismiss the indictment, which was based on his assertion that a Federal Bureau of Investigation agent coerced him into pleading guilty. A motion to dismiss the indictment due to outrageous government conduct involves a question of law that we review *de novo*. *United States v. Gupta*, 463 F.3d 1182, 1191 (11th Cir. 2006); *United States v. Savage*, 701 F.2d 867, 868 n.1 (11th Cir. 1983). We have determined that "a due process violation may result when the government's enforcement techniques reach a certain level of outrage." *Id.* at 868. "The case law emphasizes the extreme circumstances that must exist before a due process violation will be found: law enforcement techniques will be deemed

---

[1] These sections recently were codified in 46 U.S.C. § 70503.

unconstitutional only if they violate that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Id.* (quotations omitted). Cases in which the government's conduct rises to that level of outrageousness are rare. *Id.* at 869. Moreover, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *United States v. Morrison*, 101 S. Ct. 665, 668 (1981).

Here, the district court expressed concern over the Government's conduct, but ultimately determined that the conduct did not rise to the level of a due process violation, and Valencia-Vergara did not show prejudice that resulted to his defense. The district court's finding is supported by the record. Although Agent Faria undermined the attorney-client relationship and ingratiated himself with Valencia-Vergara by making three-way telephone calls to his family, this conduct cannot be said to be "shocking to the universal sense of justice." *See Savage*, 701 F.2d at 868. The offense had already been committed before Agent Faria intervened, Valencia-Vergara had the opportunity to proceed to trial, but chose to plead guilty, and he was represented during his plea and sentencing hearings by his attorney. Based on these considerations, Agent Faria's conduct, though reprehensible, did not rise to the level of fundamental unfairness and outrageousness contemplated by

3

this Court's precedent. *See id.* at 868-69. Moreover, as the magistrate judge noted, neither this Court nor the Supreme Court has reversed a conviction because of a failure to dismiss a case based on government misconduct, and this case is not one of the rare instances in which government conduct was so outrageous that it violated due process. *See United States v. Tobias*, 662 F.2d 381, 385-87 (5th Cir. Unit B Nov. 1981) (holding where (1) the government provided the defendant with all the necessary drug-making materials, (2) the government provided instructions on how to make the drugs, and (3) the defendant sought out the materials and help from the undercover government agents, the case "set the outer limits to which the government may go in the quest to ferret out and prosecute crimes," but the government's conduct did not rise to the level of a due process violation).

Moreover, even if Valencia-Vergara had shown that Agent Faria's actions were so shocking as to violate due process, he failed to show how he was prejudiced by these actions. Valencia-Vergara contends the agent's conduct should have been found to be "prejudicial *per se*," and states that he only admitted knowing there was cocaine on board the vessel after the Government spoke with him. However, because the Government stated it did not obtain any information from Agent Faria's contacts with Valencia-Vergara, and the attorney-client relationship was repaired before Valencia-Vergara entered his plea and proceeded

4

to sentencing, no prejudice can be established. *See United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987) (finding no demonstrable evidence of prejudice where the "invasion of the attorney-client relationship" produced no evidence against the defendant). Accordingly, because Agent Faria's actions did not rise to the extreme level of misconduct justifying dismissal of an indictment, and Valencia-Vergara did not show how these actions resulted in prejudice to his defense, the district court correctly denied the motion to dismiss the indictment.

## II.

Valencia-Vergara next asserts the court erred in denying him a mitigating-role reduction because he was merely the cook aboard the boat. A district court's determination of a defendant's role in an offense constitutes a factual finding to be reviewed only for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a mitigating-role reduction. *Id*. at 939.

The Guidelines provide for a four-level reduction for a defendant who acts as a minimal participant, a two-level reduction for a minor participant, and a three-level reduction for cases falling in between the minor and minimal level. U.S.S.G. § 3B1.2. A minor role in the offense means any participant "who is less culpable

than most other participants, but whose role could not be described as minimal," U.S.S.G. § 3B1.2, cmt. (n.5), and a minimal participant is a defendant who is "plainly among the least culpable of those involved in the conduct of a group," U.S.S.G. § 3B1.2 cmt. (n.4). To determine whether this reduction applies, a district court should first measure the defendant's role against the relevant conduct for which the defendant has been held accountable. *De Varon*, 175 F.3d at 940-41. The amount of drugs involved is a material consideration in assessing the defendant's role in his relevant conduct. *Id.* at 943. Further, "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." *Id.* at 942-43.

Although, in many cases, this first method of analysis will be dispositive, the district court also may measure the defendant's culpability in comparison to that of other participants in the relevant conduct. *Id.* at 944-45. Two sub-principles guide this application of the analysis: (1) the district court should look only to other participants who are identifiable or discernable from the evidence; and (2) only those participants who were involved in the relevant conduct attributed to the defendant may be considered. *Id.* at 944. "The conduct of participants in any larger criminal conspiracy is irrelevant." *Id.* Further, a defendant whose role in

6

the relevant conduct was less than that of other participants is not necessarily entitled to a minor-role reduction, where no participants are minor participants. *Id.*

The district court did not clearly err in denying Valencia-Vergara a mitigating-role reduction because his role in the offense was identical to the conduct for which he was held accountable, and he did not show that he was substantially less culpable than the other participants in the offense. Valencia-Vergara and eight other crew members knowingly helped transport 5,000 kilograms of cocaine on board a vessel as part of a conspiracy, and each was held accountable for this conduct. Valencia-Vergara testified he helped load the bales of cocaine onto the boat, and despite his assertions that he was merely a cook, this conduct demonstrates that he participated in transporting a substantial amount of drugs, and his role was not minor in the relevant conduct of possession and conspiracy to possess with intent to distribute the cocaine. *See De Varon,* 175 F.3d at 940-41. Furthermore, to the extent that Valencia-Vergara contends he was substantially less culpable than the other participants in a wider drug conspiracy, the conduct of anyone else not identifiable from the evidence involved in the overall scheme of transporting and selling cocaine was irrelevant to the assessment of his role. *See id.* at 944. Accordingly, the district court did not clearly err by denying Valencia-Vergara a mitigating-role reduction.

**III.**

Valencia-Vergara also contends the district court erred in denying safety-valve relief because the injuries that he and a codefendant sustained during the commission of the crime did not rise to the level of "serious bodily injury." We review a district court's safety-valve fact-finding for clear error. *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). Under the safety-valve provision, a district court shall impose a sentence without regard to any statutory mandatory minimum if a defendant convicted of certain drug crimes satisfies certain criteria, U.S.S.G. § 5C1.2, and also give a reduction in the defendant's offense level, U.S.S.G. § 2D1.1(b)(11). A defendant has the burden of proving his eligibility for this relief. *Cruz*, 106 F.3d at 1557. One of the criteria that must be met is found in § 5C1.2(3), which requires that "the offense did not result in death or serious bodily injury to any person." U.S.S.G. § 5C1.2(3). The Guidelines define "serious bodily injury" to include "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, cmt. (n.1(L)).

The district court did not clearly err in denying Valencia-Vergara a reduction under the safety-valve provision. The evidence shows that both he and one of his

codefendants sustained second and third degree burns on their bodies, for which they had to be treated at a hospital. In fact, Valencia-Vergara testified that he was hospitalized for two and a half days. Accordingly, because Valencia-Vergara was hospitalized, his injuries fall under the Guidelines definition for "serious bodily injury." *See* U.S.S.G. § 1B1.1, cmt. (n.1(L)). Accordingly, because two people sustained serious bodily injury during the offense, the district court did not clearly err in denying Valencia-Vergara safety-valve relief because he did not meet the requirements set forth in § 5C1.2(3).

**AFFIRMED.**