United States Court of Appeals, Eleventh Circuit.

No. 96-2270

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Juan Diego CRUZ, Defendant-Appellant.

March 6, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-179-CR-T-21(A), Ralph W. Nimmons, Jr., District Judge.

Before HATCHETT, Chief Judge, EDMONDSON, Circuit Judge, and KRAVITCH, Senior Circuit Judge.

KRAVITCH, Senior Circuit Judge:

Juan Diego Cruz was convicted of conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and was sentenced to 120 months' imprisonment. On appeal, he claims that there was insufficient evidence to support his conviction. He also challenges his sentence, arguing that the district court erred in refusing to grant him an offense level decrease pursuant to U.S.S.G. § 2D1.1(b)(4)[1] and the safety valve provision, 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2,[2] and a base level offense

---

[1] Section 2D1.1(b)(4) grants certain defendants who qualify for the safety valve a two-point offense level reduction.

[2] Section 5C1.2 provides:

In the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960 or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.[3]  We AFFIRM.

I.

In the spring of 1995, an undercover agent for the United States Customs Service, Victor Thompson, arranged with several individuals to transport 300 kilograms of cocaine into this country from Colombia.  As part of this arrangement, Thompson was to deliver 202 kilograms of cocaine in Miami to an individual named Julian.  On June 27, 1995, Thompson informed Julian that he would deliver the cocaine that afternoon at the Westland Mall in Miami. Thompson told him that Julian, or any individual that Julian sent,

---

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;  and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

[3]Because we find Cruz ineligible for the safety valve, we need not address his argument that he was entitled to a sentence reduction for acceptance of responsibility.  Cruz was sentenced to the statutory minimum of 120 months' imprisonment.  Therefore, even if he established eligibility under § 3E1.1, such eligibility could not affect his sentence.

should look for a person with shoulder length black hair wearing a black shirt with "Panama" on it. Thompson also informed Julian that the cocaine would be in a van, concealed in two "caleta."[4]

That afternoon, appellant Cruz arrived at the Westland Mall and approached the individual in the "Panama" shirt, Detective Vincent Rodriguez. Cruz told Rodriguez that he was sent by Julian and asked where the van was parked. When asked if he wanted to see the "caleta," Cruz indicated that it was not necessary. After Rodriguez and Cruz walked through the mall to the van, Rodriguez told Cruz that the "caleta" was behind the driver's seat. Cruz responded by saying "Okay, give me the keys." As Cruz was backing the van out of the parking lot, he was arrested.[5] Agents testified at trial that after his arrest, Cruz told them that he had come from New York City to pick up the van, but refused to tell the agents who had told him to pick up the van or where he was planning to take it.

At trial, Cruz was convicted by a jury. Before sentencing, he submitted an unsigned written statement to the probation officer describing his involvement in the offense. This statement was made an appendix to the presentence report. At sentencing, Cruz requested application of the safety valve provision so that he could be sentenced below the 120-month statutory minimum. Finding

_____

[4]Thompson and Detective Rodriguez of the Tampa Police Department both testified that "caleta" is a term commonly used in the drug trade to refer to concealed compartments in which narcotics are hidden.

[5]The van contained 30 kilograms of cocaine. At sentencing, Cruz was only held accountable for this amount, and not for the remainder of the drugs that Thompson agreed to provide Julian.

that Cruz had not truthfully provided to the government all information he had concerning the offense, the district court denied his request for relief under U.S.S.G. § 5C1.2.

## II.

Cruz first claims that there was insufficient evidence to support his conviction for conspiring to possess cocaine with intent to distribute. We review a sufficiency challenge *de novo,* viewing the evidence in the light most favorable to the government. *United States v. Mejia,* 97 F.3d 1391, 1392 (11th Cir.1996). In order to sustain a conviction, we must find that the government proved: (1) that a conspiracy to possess and distribute cocaine existed; (2) that Cruz knew of the conspiracy's goal; and (3) that Cruz, with knowledge, voluntarily joined the conspiracy. *Id.*

Applying these standards, we find sufficient evidence to support the jury's verdict.[6] The evidence demonstrates that Cruz traveled all the way from New York to Miami to pick up the van, recognized Detective Rodriguez and identified himself as representing Julian, and responded with understanding when Detective Rodriguez described the location of the "caleta" in the van. When Detective Rodriguez mentioned the "caleta," a term

---

[6]Cruz also claims that the evidence produced at trial created an impermissible variance from the facts charged in the indictment. He notes that the indictment stated that the cocaine conspiracy ended on June 26, 1995, prior to his participation on June 27. This court will not reverse a conviction based on a variance "unless the variance was material and substantially prejudiced the defendant." *United States v. Young,* 39 F.3d 1561, 1566 (11th Cir.1994). In this case, there was only a one-day variance. There is no evidence that this discrepancy "undermined [Cruz's] right to notice of the proper charges or exposed him to the danger of a second prosecution for the same offense." *See id.* at 1568. Therefore, we find no reversible error.

commonly used in the drug trade to describe concealed compartments in which narcotics are hidden, Cruz responded by asking for the keys to the van. This evidence demonstrates more than "mere presence"; it indicates that Cruz had discussed the details of the transaction with a member of the conspiracy and creates a reasonable inference that Cruz knew the van contained illegal drugs.

Second, Cruz argues that the district court erred in ruling that he did not meet the requirements of the safety valve provision, 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The government contends that the district court's decision not to grant a defendant safety valve relief is not reviewable on appeal. The appealability of a district court's sentencing decisions is governed by 18 U.S.C. § 3742(a), which generally allows a defendant to appeal a sentence if it: (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of a sentencing guideline; or (3) exceeds the applicable guideline range. The government relies on *United States v. McFarlane,* 81 F.3d 1013 (11th Cir.1996) (per curiam), to argue that § 3742(a) prohibits Cruz's appeal. In that case, we stated that a defendant is normally prohibited from appealing a district court's failure to grant a downward departure from the applicable Sentencing Guideline range unless the district court believed that it did not have discretion to grant such a departure. *Id.* at 1014; *see also United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989) (noting that question of district court's authority presents reviewable appeal under § 3742(a)).

Application of § 5C1.2 does not, however, result in a *departure* from the guidelines range. Rather, application of § 5C1.2 allows a defendant to be sentenced *within* the guideline range by granting relief from the minimum sentence mandated by statute. *See United States v. Flanagan,* 80 F.3d 143, 148 n. 4 (5th Cir.1996); *United States v. Ivester,* 75 F.3d 182, 183-84 (4th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996). Therefore, the rule articulated in *McFarlane* does not affect the appealability of Cruz's claim of sentencing error.

This circuit has not specifically addressed the appealability of district court denials of safety valve relief. However, a recent opinion of this court suggests that such denials are appealable. *See United States v. Agis-Meza,* 99 F.3d 1052, 1053 n. 1 (11th Cir.1996) (summarily affirming district court's denial of safety valve relief from statutory minimum). Moreover, while other circuits have not directly held that such denials are appealable under § 3742(a), they uniformly have entertained appeals challenging the denial of safety valve relief. *See, e.g., United States v. Miranda-Santiago,* 96 F.3d 517, 527 (1st Cir.1996); *United States v. Ramirez,* 94 F.3d 1095, 1100 (7th Cir.1996); *United States v. Ajugwo,* 82 F.3d 925, 929-30 (9th Cir.1996), *petition for cert. filed,* (U.S. Oct. 4, 1996) (No. 96-6223); *United States v. Adu,* 82 F.3d 119, 121-25 (6th Cir.1996); *United States v. Romo,* 81 F.3d 84, 85-86 (8th Cir.1996); *Ivester,* 75 F.3d at 183-84; *United States v. DeJesus-Gaul,* 73 F.3d 395, 397 (D.C.Cir.1996); *United States v. Rodriguez,* 60 F.3d 193, 195 n. 1 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 542, 133 L.Ed.2d

446 (1995).

Section 5C1.2 states that if certain criteria are met "the court *shall* impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." (emphasis added). Cruz claims that he has satisfied the criteria under this section and is thus entitled to be sentenced without regard to the 120-month mandatory minimum sentence. If his factual claims are correct, a sentence such as his that was based on the statutory minimum would be imposed "as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(2). Likewise, because 18 U.S.C. § 3553(f) directs the court to apply the sentencing guidelines without regard to the statutory minimum if the same five criteria are met, such a sentence would also be "imposed in violation of law." 18 U.S.C. § 3742(a)(1). Therefore, we hold that we have jurisdiction to review Cruz's claim that the district court erred in denying him relief under § 5C1.2. We will review the district court's factual determinations under this section for clear error. *See United States v. Pompey,* 17 F.3d 351, 353 (11th Cir.1994).[7]

In order to be eligible for the safety valve, a defendant must satisfy the five criteria established in § 5C1.2. Section 5C1.2(5) requires that a defendant "truthfully provide[ ] to the Government all information and evidence [he] ha[d] concerning the offense of offenses that were part of the same course of conduct." Cruz

---

[7]Other circuits uniformly have applied the clear error standard of review to a district court's factual determinations under § 5C1.2. *See, e.g., Miranda-Santiago,* 96 F.3d at 527; *Rodriguez,* 60 F.3d at 195 n. 1.

claims that the district court erred in concluding that he failed to satisfy this criterion,[8] pointing to the unsigned letter that he submitted to the probation officer.[9] In this letter, Cruz admitted that he made some false statements to the agents at the time of his arrest but reasserted that he did not know the van contained illegal drugs. He did admit that "his suspicions grew stronger" that there was something illegal in the van when he was dropped off at the mall.

A defendant has the burden of proving his eligibility for relief under § 5C1.2. *See Ramirez,* 94 F.3d at 1100; *Ajugwo,* 82 F.3d at 929; *cf. United States v. Camargo-Vergara,* 57 F.3d 993, 997-98 (11th Cir.1995) (placing burden on defendant to prove applicability of guideline that would reduce offense level). In order to satisfy § 5C1.2(5), Cruz "must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities." *United States v. Arrington,* 73 F.3d 144, 148 (7th Cir.1996). The burden is on the defendant to come forward and to supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the involvement of others and to the chain

---

[8]The government does not dispute that Cruz satisfied the other four safety valve criteria.

[9]The government argues that by providing a letter to the probation officer, Cruz did not satisfy § 5C1.2 because he did not provide this information to the "government." *See United States v. Jimenez Martinez,* 83 F.3d 488, 496 (1st Cir.1996) (holding that "government" in § 5C1.2 does not include probation officer); *Rodriguez,* 60 F.3d 193, 195 (5th Cir.1995) (same). Because we find that the information provided by Cruz, including the information submitted to the probation officer, is insufficient to satisfy the requirements of § 5C1.2(5), we need not address this argument.

of the narcotics distribution.  *Romo,* 81 F.3d at 85.

Based on the record before us, we conclude that the district court did not clearly err in concluding that Cruz had not met his burden of demonstrating complete and honest disclosure to the government.  The truthfulness of his post-arrest statements was undermined by his unsigned written statement.  His written statement, however, provided little new information regarding the commission of the offense.  Moreover, in this written statement, Cruz continued to deny that he knew that the van contained illegal drugs.  Because there was substantial evidence to suggest that Cruz knew the van contained illegal drugs, the district court's conclusion that this statement was untruthful is not clearly erroneous.

### III.

Accordingly, Cruz's conviction and sentence are AFFIRMED.