[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14560
Non-Argument Calendar

_____

D. C. Docket No. 04-20900-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUANIN ALBERTO SUAREZ O'NEILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 2, 2006)

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Juanin Alberto Suarez O'Neill appeals his sentence of 210 months of

imprisonment, imposed after he pled guilty to two drug violations. On appeal, he argues that the district court erred in denying a two-level reduction in his offense level pursuant to the "safety-valve provision," U.S.S.G. § 2D1.1(b)(7). He also claims that the district court improperly deferred to the government's position at sentencing in determining his eligibility for the reduction. Finding no reversible error, we AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Suarez O'Neill and three codefendants on one count each of (1) conspiracy to possess with intent to distribute and (2) possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a) and (j). According to the PSI, Suarez O'Neill and his codefendants were apprehended by the U.S. Coast Guard in international waters off the coast of Jamaica after the "go-fast" boat they were operating was spotted without an identifying flag. The boat refused to stop as directed and the Coast Guard was forced to pursue. The Coast Guard fired several warning shots across the bow of the boat, which caused it to stop. At that time, the Coast Guard observed Suarez O'Neill and his codefendants throwing bales and brick-shaped objects off the boat. Four large bales and 152 bricks containing approximately 186 kilograms of

2

cocaine were recovered from the water. The Coast Guard also recovered a notebook with coordinates to a meeting spot and a global positioning system. The boat was sunk after being searched and photographed.

Suarez O'Neill and his codefendants were transported to the United States Naval Base at Guantanamo Bay, Cuba, where they were turned over to the Federal Bureau of Investigation ("FBI") for transport to Miami, Florida, for processing. Suarez O'Neill made a statement to the FBI that he and two friends stole a boat near Barranquilla, Colombia, for purposes of traveling to the United States. Earlier, he met up with a man from Honduras who agreed to guide the group through the coastline. When confronted with the fact that the Coast Guard had a video showing him and his codefendants throwing packages of cocaine in the water, Suarez O'Neill denied having anything to do with narcotics on the trip. The government later determined that Suarez O'Neill served as the navigator on the boat.

Suarez O'Neill pled guilty to the two counts in his indictment, without the benefit of a plea agreement. During the plea colloquy, Suarez O'Neill told the court that he became involved in the offense out of need for money to support his children, one of whom has a serious illness which requires expensive medical care. After determining that his guilty plea was knowingly and voluntarily made, the

3

district court accepted the plea.

Prior to sentencing, the Probation Office prepared a Pre-Sentence Investigation Report ("PSI"). The addendum to the revised PSI in the record shows that Suarez O'Neill had three objections to the earlier PSI. First, he objected to a statement of fact that he was the captain of the "go-fast" boat, instead of the navigator. The error was corrected in the revised PSI. Second, he objected to the Probation Office's recommendation that he receive a two-level enhancement for acting in a managerial/supervisory role, pursuant to U.S.S.G § 3B1.1(c). Third, Suarez O'Neill objected to the denial of a two-level "safety-valve" reduction, pursuant to U.S.S.G. § 2D1.1(b)(7). Under the Probation Office's recommendations, Suarez O'Neill would have had a total offense level of 39, with a criminal history category of I, and an advisory Guidelines range of 262 to 327 months of imprisonment.

At the sentencing hearing in August 2005,[1] Suarez O'Neill renewed his objection to the PSI's previous recommendation of a two-level enhancement for his role as a manager/supervisor during the offense. The district court sustained Suarez O'Neill's objection to the enhancement based on a finding that there was no evidence that Suarez O'Neill recruited or hired his codefendants.

---

[1]Sentencing in this case occurred after the Supreme Court issued its decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

Suarez O'Neill also renewed his objection to the denial of a two-level "safety-valve" reduction. Suarez O'Neill noted that he made two proffers to federal law enforcement agents and stated that he was truthful and forthcoming in those conversations. The court then discussed two possible reductions: a reduction for "substantial assistance," pursuant to U.S.S.G. § 5K1.1 and a reduction under the "safety-valve provision," U.S.S.G. § 2D1.1(b)(7). Suarez O'Neill agreed that he did not qualify for a reduction for "substantial assistance," pursuant to § 5K1.1. He characterized the dispute over the "safety-valve" reduction as a "difference of opinion, not a difference of fact" between his view of the evidence and the government's view of the evidence. R3 at 21. He noted that he would leave the issue "in the hands of the Court." Id. The court overruled his objection and denied the "safety-valve" reduction, noting that "without the government's recommendation that he does satisfy the requirements of the safety valve, the Court can't find [that] the defendant is eligible for the safety valve." Id. at 21-22.

The court determined that Suarez O'Neill had a total offense level of 37, with a criminal history category of I, and an advisory Guidelines range of 210 to 262 months of imprisonment. Before imposing sentence, the court considered a statement Suarez O'Neill offered in mitigation, in which he apologized for his conduct and noted that he is the father of eight children, seven of whom are

5

dependent on him for support, including one child with a serious illness. After reviewing the record and considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the court imposed a sentence of 210 months of imprisonment for each count, each term to run concurrently, and 5 years of supervised release. The court discussed its obligation to "fashion a sentence that is appropriate for the individual, takes into consideration the nature of the offense, the need for punishment to discourage others, . . . [and] that is not disparate with others." Id. at 23. The court also noted that after considering all of the circumstances, the sentence it imposed was at the low end of the Guidelines range.

## II. DISCUSSION

Pursuant to the Supreme Court's decision in United States v. Booker, the Sentencing Guidelines are no longer mandatory. 543 U.S. 220, 264, 125 S. Ct. 738, 767 (2005). Although the Guidelines are merely advisory, a district court must calculate the advisory sentencing range correctly and must consider it when determining a defendant's sentence. United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005). Booker does not alter our previously established standards of review of the district court's interpretation of the Guidelines. See id.

We review a district court's "factual determinations and subsequent denial of 'safety valve' relief for clear error." United States v. Camacho, 261 F.3d 1071,

6

1073 (11th Cir. 2001). The district court's application of the Guidelines is reviewed de novo. United States v. Garcia, 405 F.3d 1260, 1274 (11th Cir. 2005) (per curiam). "A defendant has the burden of proving his eligibility for relief under U.S.S.G. § 5C1.2." United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). When a sentence is imposed as the result of an erroneous interpretation of the Sentencing Guidelines, harmless error analysis is applied. Williams v. United States, 503 U.S. 193, 203, 112 S. Ct. 1112, 1120-21 (1992) (applying Federal Rule of Criminal Procedure 52(a)). Remand is unnecessary if the party defending the sentence persuades the appellate court that the district court would have imposed the same sentence absent the erroneous factor. Id.

The Sentencing Guidelines provide for a two-level reduction in the offense level for certain drug-related crimes if the defendant meets five criteria as set forth in U.S.S.G. § 5C1.2(a) and 18 U.S.C. § 3553(f). U.S.S.G. § 2D1.1(b)(7). To qualify for an offense level reduction under the "safety-valve" provision of the Sentencing Guidelines, the defendant must show: (1) he does not have more than one criminal history point; (2) he did not use violence or possess a firearm or other dangerous weapon during the offense; (3) death or serious bodily injury did not occur to any person as a result of the offense; (4) he was not an "organizer, leader, manager, or supervisor of others in the offense" and not engaged in a continuing

7

criminal enterprise; (5) he must truthfully provide the government with all information and evidence he has concerning the offense. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). The record supports and the parties do not dispute that Suarez O'Neill meets the first four criteria. The point of contention lies with the fifth factor under § 5C1.2(a).

The fifth factor of the "safety-valve" is a "tell-all" provision. Under this provision, "the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (per curiam). However, it is the responsibility of the district court to determine the truthfulness of the information the defendant provided to the government. United States v. Espinosa, 172 F.3d 795, 797 (11th Cir. 1999) (per curiam).

Here, the district court erred when it deferred to the government's position at sentencing by concluding that without the government's recommendation it could not find that the defendant was eligible. See R3 at 21-22; see also Espinosa, 172 F.3d at 797. Nevertheless, the district court's error was harmless because Suarez O'Neill failed to satisfy his burden to establish his eligibility for "safety-valve" relief. See Cruz, 106 F.3d at 1557; see also Williams, 503 U.S. at 203, 112 S. Ct.

8

at 1120-21. The record confirms that Suarez O'Neill failed to provide the district court with a sufficient evidentiary basis to grant "safety-valve" relief. More specifically, all Suarez O'Neill offered, through his attorney, was a comment to the district court that he had spoken with government agents on two occasions, and that he and the government had a difference in opinion on whether he was forthright and truthful during those discussions. See R3 at 20-22. After that comment, Suarez O'Neill appeared satisfied to let the district court decide the issue and provided no additional evidence of his eligibility. Id.

## III. CONCLUSION

Because Suarez O'Neill failed to present sufficient evidence to establish that he qualified for "safety-valve" relief, we conclude that the district court's deference to the government's position at sentencing was not reversible error.

**AFFIRMED.**