[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12642
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00480-JDW-AEP-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MATTHEW DAVID JAMES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 21, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After pleading guilty, Matthew David James appeals his concurrent 60-

month sentences for one count of conspiracy to manufacture and possess with

intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(vii) (Count 1), and one count of manufacturing and possessing with intent to distribute an unspecified quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2).  After review, we affirm.

## I.  BACKGROUND FACTS

### A.     Request for Safety-Valve Relief

James pled guilty to both counts charged in the indictment.  According to the final presentence investigation report ("PSI"), James's total offense level was 17 and his criminal history category was I, which resulted in an advisory guidelines range of 24 to 30 months' imprisonment.  However, because Count 1 carried a mandatory minimum five-year sentence pursuant to  21 U.S.C. § 841(b)(1)(B)(vii), the PSI noted that James's advisory guidelines range became 60 months.  See U.S.S.G. § 5G1.1(c)(2).  The PSI did not address James's eligibility for safety-valve relief from the five-year mandatory minimum sentence, pursuant to U.S.S.G. § 5C1.2.

James filed a sentencing memorandum asking for safety-valve relief, and, if granted, a downward variance from the advisory guidelines range.[1]  James's memorandum stated that the government believed he had not been truthful about the "participation of an unindicted individual" in James's marijuana growing operation, but that James "ha[d] no knowledge regarding the participation of this individual in the offense" and that he had provided the government with truthful information.

In the PSI's addendum, the probation officer responded that James was ineligible for a safety-valve reduction because, according to the government, he had not provided the government with "all information and evidence concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

**B.      Adoption of Co-Defendant Brown's Motion to Declare
§ 841(b)(1)(B)(vii) Unconstitutional**

Prior to sentencing, James's co-defendant Michael Brown filed a "Motion to Declare Mandatory Minimum Sentencing Provision of 21 U.S.C. § 841(b)(1)(B)(vii) Unconstitutional and to Impose a Sentence Below the

---

[1]According to James's sentencing memorandum, the initial PSI recommended that James receive safety-valve relief, but the PSI was revised after the government contended that James was ineligible because he had not been truthful in providing the government with information about his offenses.

Otherwise Applicable Minimum Sentence." James moved to adopt Brown's motion, which argued that: (1) the government was selectively prosecuting marijuana offenders because the U.S. Attorney General had announced a policy of not prosecuting marijuana distributors who were not violating their respective state's laws; (2) individuals who were similarly situated to him but who were located in states that had deregulated marijuana were not being prosecuted under the Controlled Substances Act and, thus, were not subject to the mandatory minimum in § 841(b)(1)(B)(vii); (3) the government's selective prosecution of marijuana offenders violated his equal protection and due process rights and the Tenth Amendment; (4) because the government was deferring to state law in determining whom to prosecute, the district court should defer to state law in sentencing those the government decided to prosecute; and (5) under Florida law, Brown would not be subject to a five-year mandatory minimum sentence.

Brown attached a copy of an October 19, 2009 memorandum from Deputy Attorney General David Ogden stating, inter alia, that investigating and prosecuting individuals whose actions were in clear and unambiguous compliance with state laws allowing for the medical use of marijuana would not be the most efficient use of federal government resources, but that, even in those states,

prosecution of commercial enterprises that unlawfully market and sell marijuana for profit continued to be an enforcement priority.

Without ruling on James's motion to adopt Brown's motion, the district court denied Brown's motion, concluding that: (1) Brown had waived his selective prosecution and Commerce Clause arguments by pleading guilty; (2) the government's prosecutorial policy did not violate the Equal Protection Clause as applied to Brown because there was a rational basis for distinguishing between those states that decriminalized medical use of marijuana and those states that had not, and Brown "is not similarly situated with individuals who possess marijuana for medical use in states which have decriminalized that use"; and (3) § 841(b)(1)(B)(vii) is not facially unconstitutional because there is a rational basis for imposing a more severe punishment for higher drug quantities.

## C. Sentencing

At the sentencing hearing, the district court granted James's motion to adopt Brown's motion to declare § 841(b)(1)(B)(vii) unconstitutional, but then denied the motion because James had waived any selective prosecution argument by pleading guilty.

With respect to James's safety-valve request, the primary issue was whether James had been truthful about the involvement of Carlo Colucci in the marijuana

5

growing operation. Colucci owned three of the homes in which James and co-defendant Brown grew marijuana, and James and Brown had worked for Colucci's nightclub for years.

James testified that, to his knowledge, Colucci did not receive any marijuana or money from the marijuana growing operation and that he had told Timothy Lutz, the Drug Enforcement Agency's case agent in the investigation, about everyone involved in the operation. During his debriefing, James told Agent Lutz, inter alia, that: (1) co-defendant Brown, and not James, paid Colucci rent; (2) James was primarily responsible for growing the marijuana in the houses, Brown was primarily responsible for selling the marijuana, and the two men shared the proceeds; (3) Brown did not tell James to whom he sold the marijuana; (4) both James and Brown sold marijuana to Zoe Placiotis, usually between two and five pounds every two to six weeks; (5) James was aware that Brown sold marijuana to Peter James (Defendant James's brother), Angelo Huritos, Jay Singh and Billy Summers (Zoe Placiotis's boyfriend); (6) James believed that the majority of the marijuana they grew went to Huritos; and (7) to James's knowledge, Colucci did not receive either marijuana or any of the proceeds from the marijuana sales.

6

Agent Lutz testified, <u>inter alia</u>, that various members of the marijuana growing operation provided information that contradicted what James said during his debriefing. From interviews with others, Agent Lutz learned that Zoe Placiotis, Billy Summers, Peter James and Angelo Huritos started out helping Defendant James and Brown with their growing operations and buying small amounts of marijuana from them, but, over time, James and Brown helped them begin their own marijuana growing operations. Zoe Placiotis and Billy Summers operated one grow house and Peter James and Angelo Huritos operated two grow houses. If one group needed marijuana and was out, another group would supply them, but "it wasn't where anybody was buying the whole shipment." Based on Agent Lutz's calculations as to the average amount of marijuana the grow houses produced, Agent Lutz did not think James and Brown were selling most of their marijuana to Paciotis and Summers or Peter James and Huritos.

Agent Lutz identified the following information from other participants that indicated James had not accounted for a large amount of the marijuana sales and that James and Brown had one main buyer, probably Colucci, whom James was refusing to identify: (1) Placiotis and Summers told Lutz they had overheard James and Brown referring to "their guy," who was "one guy who was taking the majority" of their marijuana; (2) Placiotis never saw James or Brown hand

marijuana to Colucci, but she believed Brown and James were referring to Colucci; (3) Huritos also overheard James and Brown discussing their "one main guy" and when Huritos asked Peter James about it, Peter said they were referring to Colucci; (4) Placiotis did not think Defendant James ever actually worked for Colucci's nightclub; (5) Huritos admitted accepting money from Peter James and then Huritos's business issued Peter paychecks so it looked like Peter had legitimate employment; and (6) Huritos believed Defendant James had a similar arrangement with Colucci.

The district court advised Defendant James that it suspected he knew more than he had told Agent Lutz and called a short recess. When the hearing resumed, James insisted that he had truthfully informed Agent Lutz that the majority of the marijuana he and Brown grew went to Huritos. The district court noted that Defendant James had the burden of proof and that the court did not "just accept the government's representation, particularly when it's a situation where the agent is basing his opinion and determination on his experience and understanding from other cooperating defendants, and you simply say, well, you don't know." However, the district court found Defendant James's claims that he did not know to whom Brown was selling their marijuana "not persuasive" and concluded that James had not met his burden of proof with regard to safety-valve relief. The

8

district court noted James's calculated answers and demeanor during his testimony and the possible motivations James had for not being forthcoming about the main buyer for the marijuana. The district court pointed out that there was "a lot of circumstancial evidence" supporting a finding that James had not given complete information as to whom they were selling their marijuana. The district court concluded that James did not qualify for safety-valve relief and sentenced James to concurrent 60-month sentences. James filed this appeal.

## II. DISCUSSION

### A.    Motion to Declare § 841(b)(1)(B)(vii) Unconstitutional

On appeal, James, like his co-defendant Brown, argues that the district court erred in denying the motion to declare § 841(b)(1)(B)(vii) unconstitutional.[2] Specifically, James contends his equal protection rights were violated because the government is not prosecuting "similarly situated defendants" in other states for the same conduct (possessing 100 marijuana plants with intent to distribute) that subjected Brown to § 841(b)(1)(B)'s five-year mandatory minimum sentence.[3]

---

[2]We review <u>de novo</u> the constitutionality of a statute. <u>United States v. Phaknikone</u>, 605 F.3d 1099, 1107 (11th Cir.), <u>cert. denied</u>, 131 S. Ct. 643 (2010).

[3]On appeal, James does not argue that § 841(b)(1)(B)(vii)'s sentencing scheme imposing a five-year mandatory minimum sentence when the § 841(a) offense involves 100 or more marijuana plants: (1) on its face violates the Equal Protection Clause; (2) violates the Due Process Clause; or (3) violates the Tenth Amendment.

As in Brown's appeal, we find no merit to James's "as applied" equal protection claim. Any alleged selective prosecution under § 841(a), the substantive offense, is not a basis for attacking on equal protection grounds the imposition of the five-year mandatory minimum in § 841(b)(1)(B)(vii), the penalty provision. Put another way, James is not "similarly situated" to people who have never been prosecuted for violating § 841(a). At a minimum, James needed to compare himself to other defendants convicted under § 841(a) for possessing at least 100 marijuana plants but who were not subjected to § 841(b)(1)(B)(vii).

James would be hard pressed to find a sufficient comparator for such an equal protection claim. Once a defendant pleads guilty to possessing more than 100 marijuana plants, absent a substantial assistance motion or safety-valve relief, the district court does not have the authority, much less the discretion, to sentence below the five-year statutory mandatory minimum. See United States v. Castaing-Sosa, 530 F.3d 1358, 1361-62 (11th Cir. 2008). For this reason, James's argument that the district court should have "deferred" to Florida's less severe marijuana sentencing laws lacks merit.

Despite James's claims to the contrary, the gravamen of his equal protection argument is not selective sentencing, but selective prosecution. As the district court correctly concluded, James waived this argument when he pled guilty. See

10

United States v. Smith, 532 F.3d 1125, 1127 (11th Cir. 2008) (explaining that a defendant generally waives all non-jurisdictional challenges to the conviction by entering a guilty plea).

**B.      Safety-Valve Relief**

"Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006); see also 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.  The defendant must prove eligibility for safety-valve relief by a preponderance of the evidence.  See Milkintas, 470 F.3d at 1345; United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006).

Of the five safety-valve criteria, the only one at issue on appeal requires the defendant "not later than the time of the sentencing hearing" to provide truthful and complete information "concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."  U.S.S.G. § 5C1.2(a)(5).  The defendant must come forward and truthfully supply all information he has relating to his offense, and the government is not required to

solicit information from the defendant. Milkintas, 470 F.3d at 1345-46. A drug defendant's obligation to provide full disclosure includes any "information relating to the involvement of others and to the chain of the narcotics distribution." United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997).[4]

We find no clear error in the district court's safety-valve ruling. James testified that he had provided complete and truthful information when he said Huritos bought the majority of the marijuana and that to his knowledge Carlo Colucci was not a buyer. Agent Lutz, on the other hand, testified that others involved in the marijuana growing operation contradicted James in interviews. Specifically, Agent Lutz's investigation revealed, inter alia, that: (1) Placiotis and Huritos overheard James and Brown discussing a main buyer and both understood the main buyer to be Colucci; (2) based on the amount of marijuana James's grow houses produced, Huritos, who had his own grow houses and only purchased from James and Brown when he needed additional marijuana, was not likely to be the "main buyer"; (3) James and Brown collected paychecks from Colucci's nightclub; (4) Placiotis and Huritos believed James did not actually work at

---

[4]"When reviewing a district court's safety-valve decision, we review for clear error a district court's factual determinations . . . [and] de novo the court's legal interpretation of the statutes and sentencing guidelines." United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006) (quotation marks omitted). "The question of whether the information [that the defendant] supplied to the government . . . was truthful and complete . . . is a factual finding for the district court." United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000).

12

Colucci's nightclub; and (5) three of James's grow houses were rented from Colucci. The district court was entitled to credit Agent Lutz over James, and Agent Lutz's testimony suggested that James was withholding the identity of his main marijuana buyer during his debriefings. See United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005) (explaining that when the sentencing court resolves conflicting testimony between two witnesses, "the resolution will almost never be clear error").[5]

James argues that when a defendant testifies that he provided full and complete information, the government is required to present competent evidence to rebut his testimony. This argument ignores the fact that the district court heard James's testimony and discredited it and that the government produced Agent Lutz's testimony as to his investigation, which indicated that James knew of, but would not reveal, a main marijuana buyer, who was most likely Colucci. Under

---

[5]To the extent James argues that the district court improperly credited Agent Lutz's testimony based on his status as a law enforcement officer, we disagree. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that the district court may not rely on a "credit law enforcement in case of conflict" rule in making credibility determinations). The district court commented extensively on why it did not believe James's testimony.

We also reject James's claim that the district court impermissibly deferred to the government's assessment of the truthfulness and completeness of James's information. See United States v. Espinosa, 172 F.3d 795, 796-97 (11th Cir. 1999) (explaining that the district court may not defer to the government in determining whether the defendant provided truthful and complete information). The district court stated explicitly that it was not relying on the government's assessment, heard testimony from both Agent Lutz and James and engaged in a lengthy discussion regarding why it found James had not provided complete information.

the circumstances, the district court's finding that James was withholding information relating to his offense was not clearly erroneous.

**AFFIRMED.**