[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14854
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20774-JAL-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ERNESTO FONSECA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 24, 2013)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Ernesto Fonseca appeals his sentence of 108-months imprisonment for conspiracy to possess with intent to distribute methamphetamine and attempted possession with intent to distribute methamphetamine, both in violation of 21 U.S.C. § 846.  He argues the district court clearly erred in denying him relief under the "safety valve" provisions of 18 U.S.C. § 3553(f) and United States Sentencing Guidelines (USSG) § 5C1.2.  Fonseca also argues that the district court abused its discretion by not permitting his counsel to testify at the sentencing hearing, which he claims would have harmonized the apparent inconsistency in his statements.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Immediately after Fonseca's arrest, he told Drug Enforcement Agency (DEA) agents that Jorge Pena supplied him with the methamphetamine.  At a later counseled debriefing interview, Fonseca told the government that he received the drugs from his cousin, Juan Carlos Romero.  Fonseca admits that he "originally told the police he received the drugs from Pena, and he did not identify Romero as the drug source until his later debriefing."

Agent Daniel Summers was the lead agent in the case against Fonseca and his co-defendants.  At sentencing, Agent Summers testified that during Fonseca's debriefing interview, Fonseca said that Romero gave him the drugs so that he "could sell the crystal methamphetamines and make money on his own."  Agent Summers also testified that during the course of his investigation, he learned that

2

the original plan was for Fonseca to sell the drugs. After Fonseca was unable to sell the drugs, Fonseca called Romero. Romero then told Fonseca to give the drugs to Pena.

Fonseca submitted certain statements to the sentencing court. In Defendant's Exhibit 4, Fonseca said that the original plan was for Fonseca to give the drugs to Pena. The sentencing judge concluded that Fonseca provided "contradictory statements" because Fonseca said during his debriefing that he was to sell the methamphetamine himself, and that when he could not do so, Romero told him to give the drugs to Pena. The sentencing judge found that this statement during debriefing contradicted Fonseca's statement in Defense Exhibit 4, where Fonseca said the plan was always to give Pena the drugs. Based on this, the sentencing judge found that Fonseca was not eligible for safety-valve relief because he did not meet his burden of showing that he provided truthful and complete information to the government. Fonseca appeals, arguing that the sentencing judge made clearly erroneous factual findings about Fonseca's statement during his debriefing.

## II.    DISCUSSION

Pursuant to 18 U.S.C. § 3553(f), a sentencing court "shall impose a sentence pursuant to the guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court

3

finds at sentencing, after the Government has been afforded the opportunity to make a recommendation," that all five of the factors listed in USSG § 5C1.2 are present.  Here we consider only the last safety-valve factor, which requires the defendant to show that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  USSG § 5C1.2.  "This final factor is a tell-all provision: to meet its requirements, the defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct."  United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (quotation marks omitted); see also United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997) ("A defendant has the burden of proving his eligibility for relief under § 5C1.2.").  We review the district court's factual findings under this section for clear error.  Johnson, 375 F.3d at 1302.

## A.

Fonseca asserts that the sentencing judge based his decision not to award "safety valve" relief on "demonstrably inaccurate factual findings" concerning Fonseca's truthfulness in post-arrest statements.  Specifically, Fonseca claims that the sentencing judge committed error by finding that Fonseca made several

statements during his debriefing after being taken into custody, when there was actually "minimal evidence" about what he said.

First, Fonseca challenges the sentencing judge's finding that Fonseca told the agents at his debriefing that he was approached by Romero. However, there was evidence to support the sentencing judge's finding in that regard. Indeed, Agent Summers testified that Fonseca told agents at his debriefing that Romero supplied the drugs.

Second, Fonseca argues that the sentencing judge erroneously found he made statements at his debriefing that he only sold/turned over drugs to Pena after he was unable to sell the drugs otherwise, and after Romero instructed him to give the drugs to Pena. In fact, Agent Summers testified that at the debriefing, Fonseca originally said that Pena was the supplier, but then later conceded that Romero was the supplier. Agent Summers then clarified to the court that Fonseca explained that Romero told Fonseca to give Pena the drugs after Romero discovered that Fonseca couldn't sell the drugs otherwise. And there was also Fonseca's written statement that contradicted these facts by saying that Romero told Fonseca to give the drugs to Pena from the start.

On this record, the district court did not clearly err in its finding that Fonseca failed to provide a true and complete proffer and that his statements were contradictory and equivocal.

5

B.

Nevertheless, Fonseca argues that the district court abused its discretion in not allowing his counsel to testify, which would have cleared up the alleged inconsistencies.

We review all evidentiary decisions in the district court for abuse of discretion. United States v. Brown, 415 F.3d 1257, 1264–65 (11th Cir. 2005). A district court abuses its discretion if the district court's evidentiary decision was based on a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). Even if we determine that the district court abused its discretion, we will only overturn an evidentiary ruling if it resulted in a substantial prejudicial effect. United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir. 2004).

At sentencing, the district court has the discretion "to determine the kinds and form of information it will consider" to hand down the appropriate sentence. United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir. 1989) (per curiam). Due process requires that the defendant have the opportunity to refute the information brought against him at sentencing, but he does not necessarily have the right to call and cross-examine every possible witness. Id.

Given the district court's wide latitude in conducting evidentiary rulings, we cannot say that the district court abused its discretion in not allowing Fonseca's

6

counsel to testify.  This is especially true where, as here, the court already had plenty of other evidence on which to base its ruling.  Neither can we say that this decision generated a substantial prejudicial effect based on the breadth of inconsistencies in Fonseca's statements that has already been discussed.  See Part II(A), supra.

For these reasons, we affirm.

**AFFIRMED.**

7