[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10638

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JONATHAN GABRIEL DE LOS SANTOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20122-CMA-1

_____

Before JILL PRYOR, BRASHER and ABUDU, Circuit Judges.

PER CURIAM:

Jonathan De Los Santos appeals his 120-month sentence, which the district court imposed after he pled guilty to conspiracy to distribute a controlled substance. On appeal, De Los Santos argues that the district court erred in declining to grant him safety-valve relief based on its finding that he failed to provide complete and truthful information to the government. After careful review, we affirm.

## I.

De Los Santos pled guilty pursuant to a plea agreement to one count of conspiracy to distribute cocaine, in violation of 18 U.S.C. § 846. The plea agreement provided that the mandatory minimum term of imprisonment for his offense was 10 years. The agreement further provided that the government would recommend that the district court impose a sentence below the statutory minimum pursuant to the so-called "safety-valve" provision in Section 5C1.2 of the United States Sentencing Guidelines so long as De Los Santos "truthfully provided to the United States all information and evidence that [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Doc. 24 at 4[1]; *see* U.S. Sent'g Guidelines Manual § 5C1.2(a) (explaining that a sentencing court "shall impose a sentence in

---

[1] "Doc." numbers are the district court's docket entries.

accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets [several] criteria," including that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan").

Before sentencing, the government advised De Los Santos's probation officer charged with assembling his presentence investigation report (PSR) that De Los Santos had not provided a complete and truthful statement regarding his involvement in and knowledge of the conspiracy. As a result, the probation officer opined that § 5C1.2 was inapplicable and reported De Los Santos as being subject to the 10-year statutory mandatory minimum term of imprisonment.

De Los Santos objected to the determination that he did not qualify for safety-valve relief under § 5C1.2. He asserted that he would satisfy the truthful information requirement by the time of sentencing, as contemplated by the Guidelines. *See* U.S. Sent'g Guidelines Manual § 5C1.2(a)(5) (requiring disclosure of requested information "not later than the time of the sentencing hearing").

At sentencing, the government asserted that De Los Santos had failed to satisfy the truthful-information requirement for safety-valve relief and recommended that he be sentenced to the 10-year mandatory minimum term of imprisonment. De Los Santos responded that he had "given a safety valve statement to the

Government as was requested of him" and had "responded to some written questions that were posed to him by the . . . Government." Doc. 52 at 3. He acknowledged, however, that the government had believed him to be untruthful in his responses. To establish his truthfulness, De Los Santos called law enforcement agent Marcelino Mariabello to testify about the drug distribution conspiracy and the information De Los Santos gave him about the scheme. Mariabello testified that De Los Santos had admitted that as part of the conspiracy he had received cocaine from other co-conspirators. Mariabello testified that De Los Santos admitted distributing the cocaine he had received. And, Mariabello testified, De Los Santos had given law enforcement the names of some of the people to whom he distributed drugs. But, according to Mariabello, De Los Santos had not been truthful and complete in his statements to law enforcement. De Los Santos, Mariabello testified, had "failed to advise of other sources of supply" of the cocaine he distributed, lied about the amount of cocaine he received, provided only a partial list of his distribution customers, withheld information about other unindicted participants in the scheme, and generally "minimized his role" in the offense. *Id.* at 8, 12, 14. Mariabello testified that he knew De Los Santos's statements were not truthful based on law enforcement's investigation of the sprawling conspiracy, including information obtained from several cooperating witnesses and from physical evidence like transaction ledgers.

De Los Santos argued that Mariabello's testimony supported the application of § 5C1.2 notwithstanding the agent's testimony about De Los Santos's lack of truthful or complete information. He

argued that safety-valve relief was "not meant to be coopera-tion"—that is, § 5C1.2 contemplated information about "the com-mon plan or scheme that is part of this indictment," not about pos-sible crimes further afield from the indicted offense. *Id.* at 23, 25. He further argued that the fact that cooperating witnesses gave Mariabello different information did not mean that his statements were untruthful. In response, the government argued that all the information De Los Santos was asked to provide, and about which Mariabello testified, was related to the conspiracy of which De Los Santos was a part. The district court agreed with the government and ruled that De Los Santos was ineligible for safety-valve relief. The court imposed the mandatory minimum of 10 years' impris-onment.

This is De Los Santos's appeal.

## II.

When reviewing the denial of safety-valve relief, we review for clear error the district court's factual findings, and we review *de novo* the court's legal interpretation of the Guidelines. *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004). Specifically, we re-view only for clear error the court's determination as to whether a defendant has provided complete and truthful information for safety-valve purposes. *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997). It is the defendant's burden to demonstrate that he has met all the safety-valve factors. *Johnson*, 375 F.3d at 1302. We will not disturb a district court's findings under clear error review "unless we are left with a definite and firm conviction that a

mistake has been committed." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (internal quotation marks omitted).

### III.

On appeal, De Los Santos argues that the district court clearly erred in determining that he had not been entirely truthful, contending that the information he provided law enforcement was simply "deemed to be untrue." Appellant's Br. at 16. Acknowledging, however, that the court had some evidence upon which to base its finding, he further argues that the court based that finding solely on information law enforcement obtained from cooperating witnesses. Finally, De Los Santos argues that the district court required more of him—full cooperation—than § 5C1.2 contemplates. As we explain, we disagree.

In an offense like the one De Los Santos committed, for which a statute provides a mandatory minimum sentence, a defendant is eligible for a sentence less than the minimum if he meets several requirements. U.S. Sent'g Guidelines Manual § 5C1.2. As relevant to this appeal, the requirements for safety-valve relief include that, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* § 5C1.2(a)(5); *see* 18 U.S.C. § 3553(f)(5) (same). We have referred to this requirement as "a 'tell-*all*' provision: to meet its requirements, the defendant has an affirmative responsibility to truthfully disclose to the government all

information and evidence that he has about the offense and all relevant conduct." *Johnson*, 375 F.3d at 1302 (internal quotation marks omitted).

The district court did not clearly err in finding that De Los Santos had not been entirely truthful and had provided incomplete information to law enforcement. True, in determining whether a defendant has been truthful the district court may not simply defer to the government but must independently determine the truthfulness of the information the defendant has provided. *United States v. Espinosa*, 172 F.3d 795, 797 (11th Cir. 1999). But, contrary to De Los Santos's assertion, the district court did not merely deem his information to be untrue. Rather, the court expressly relied upon the testimony of Mariabello, a law enforcement agent directly involved in the investigation of this case.

And Mariabello's testimony about De Los Santos's truthfulness and forthcomingness was not based solely on information cooperating witnesses provided. Mariabello testified that law enforcement also obtained ledgers describing transactions between coconspirators and seized large quantities of cocaine during searches relating to the conspiracy, both of which contributed to law enforcement's understanding of the scope of the conspiracy. Undoubtedly, Mariabello's opinion about the reliability De Los Santos's information was based heavily—though not entirely—on the accounts of cooperating witnesses. But even accepting for argument's sake that cooperating witnesses may have had incentives to be untruthful about De Los Santos's involvement in the conspiracy,

here the record suggests they were truthful. As Mariabello testified, the cooperating witnesses were interviewed separately from one another, and their accounts nonetheless were consistent as to De Los Santos's role in the conspiracy. For these reasons, we are not left with a definite and firm conviction that the district court made a mistake in its factual findings.

Lastly, we address De Los Santos's argument that the district court misconstrued the safety-valve provision to require him to co-operate in law enforcement's investigation to the extent that it reached beyond the scope of the indictment. We have said that where the defendant's charges include a drug conspiracy, a complete statement under the safety-valve provision may include information relevant to the involvement of others in the chain of distribution. *Cruz*, 106 F.3d at 1557. This chain-of-distribution information was the subject of the government's inquiries with De Los Santos. The information the government sought pertained to the scope of the conspiracy, including De Los Santos's and others' involvement in it. The government sought a broad range of information because the conspiracy was extensive, not because the government was reaching beyond the scope of the conspiracy charged in the indictment. We therefore reject De Los Santos's argument.

For the foregoing reasons, we affirm De Los Santos's sentence.

**AFFIRMED.**