[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12517
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:10-cr-14094-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR HUGO RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 28, 2011)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

After pleading guilty, Victor Hugo Rodriguez appeals his total 70-month

sentence for conspiracy to possess with intent to distribute cocaine, in violation of

21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of

21 U.S.C. § 841(a)(1) and (b)(2)(B).  On appeal, Rodriguez challenges the district court's imposition of a firearm enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), and denial of his request for safety-valve relief under U.S.S.G. § 5C1.2.  He also argues that the district court erroneously applied a legal presumption that a guidelines-range sentence should apply.  After review, we affirm.

## I.  FIREARM ENHANCEMENT

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level increase in a defendant's offense level, "[i]f a dangerous weapon (including a firearm) was possessed."  The increase applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, cmt. n.3.  As an example, the commentary states that the enhancement would not apply "if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."  Id.

The government has the initial burden to show by a preponderance of the evidence that "the firearm was present at the site of the charged conduct" or that "the defendant possessed a firearm during conduct associated with the offense of conviction."  United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006).  However, the government need not prove that the firearm was used to facilitate the offense.  United States v. Audain, 254 F.3d 1286, 1289 (11th Cir. 2001).  If the

government meets its initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was "clearly improbable." Stallings, 463 F.3d at 1220 (quotation marks omitted).[1]

Here, according to the undisputed facts in the Presentence Investigation Report ("PSI"), Rodriguez drove his Chevrolet Tahoe SUV to a McDonald's restaurant to sell cocaine to confidential sources working for law enforcement. After the delivery vehicle, an Isuzu Trooper, arrived in the parking lot, Rodriguez and the men in the Isuzu Trooper were arrested. Investigators found a 9mm semi-automatic firearm in a gun case in Rodriguez's Tahoe SUV and three kilograms of cocaine in the Isuzu Trooper. Rodriguez held a concealed firearm permit and license issued by the state of Florida.

At sentencing, the parties did not dispute that Defendant Rodriguez's firearm was stored in a gun case under the rear seat on the driver's side of his Tahoe SUV. The government stated, without objection from Defendant Rodriguez, that the gun case was unlocked and the gun was fully loaded. The government submitted a picture of the firearm in its case along with an unused gun

---

[1]With regard to § 2D1.1(b)(1)'s firearm enhancement, we review the district court's findings of fact for clear error and its application of the Sentencing Guidelines to those facts de novo. United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006).

lock.

The district court found that the gun was "in the case, immediately behind [Rodriguez] in the vehicle, the case was not locked, it was not open, but it was not locked," even though "[h]e had easy access to a gun lock."[2] The district court concluded that the § 2D1.1(b)(1) firearm enhancement applied because Rodriguez "probably" had the firearm there as "personal protection" and the firearm "was involved in the transaction to the extent that it was there to back him up if he needed it."

Because Rodriguez did not dispute the presence of his firearm in his Tahoe SUV at the scene of the drug deal, the burden shifted to Rodriguez to show that the connection between his firearm and the offense was clearly improbable. Based on the undisputed facts, Rodriguez did not meet his burden. Rodriguez brought the loaded gun to the McDonald's parking lot where he planned to make the cocaine transaction. During the drug deal, Rodriguez retained access and control over the fully loaded firearm, which was in his unlocked gun case under the rear, driver's side seat. Neither the fact that Rodriguez had a license to carry the gun nor the fact that he got out of his vehicle without accessing the gun makes the connection between the gun and the drug deal "clearly improbable." Accordingly,

_____

[2]The parties did not object to these factual findings in the district court or on appeal.

4

we cannot say the district court erred in applying the two-level firearm increase under U.S.S.G. § 2D1.1(b)(1).

## II. SAFETY-VALVE RELIEF

"Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." United States v. Milkintas, 470 F.3d 1339, 1344 (11th Cir. 2006); see also 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The defendant must prove his eligibility for safety-valve relief by a preponderance of the evidence. United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). To be eligible, among other things, a defendant must not have "possess[ed] a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2).[3]

Here, Rodriguez did not carry his burden to show he was eligible for safety-valve relief. As the district court found, Rodriguez constructively possessed the gun "in connection with" the charged cocaine trafficking offenses. Specifically, Rodriguez admitted owning the loaded gun and putting it in an unlocked gun case in his Tahoe SUV, which he then drove to the planned drug deal. See United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996) (explaining that a defendant

---

[3]In reviewing the denial of safety-valve relief under § 5C1.2(a)(2), we review the district court's findings of fact for clear error and its application of the Sentencing Guidelines to those facts de novo. United States v. Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004).

5

had constructive possession if he exercised "ownership, dominion, or control" over an item itself or the place of concealment of the item, such as a vehicle); United States v. Jackson, 276 F.3d 1231, 1234 (11th Cir. 2001) (explaining that in construing the "in connection with" requirement in other firearm enhancements under the guidelines, this Court has concluded that "mere possession of a firearm can be enough" because "it ma[kes] sense to conclude that the firearm potentially emboldened the defendant to undertake illicit drug sales"). Thus, the district court did not err in denying Rodriguez's request for safety-valve relief.

### III. REASONABLENESS

A sentencing court may not presume that the applicable guidelines range is reasonable. Nelson v. United States, 555 U.S. 350, 352, 129 S. Ct. 890, 892 (2009). Rather, after calculating the guidelines range, the sentencing court must "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." Id. at 351, 129 S. Ct. at 891-92 (remanding for resentencing where district court said that the guidelines were "considered presumptively reasonable" and that "unless there's a good reason in the [statutory sentencing] factors . . . , the Guideline sentence is the reasonable sentence" (brackets in original)).

Rodriguez argues that the district court improperly gave "great weight" to the Sentencing Guidelines and applied a presumption that a guidelines sentence was reasonable. Rodriguez focuses on one statement by the district court "that Congress has an absolute right to set guidelines for sentencings." However, when read in context, the district court's statement does not reflect that it impermissibly presumed that a sentence within the advisory guidelines range was reasonable.

Initially, the district court stated that it intended to impose a sentence at the low end of the advisory guidelines range "unless [defense counsel] can convince me" to "go below" that range. The district court then listened as defense counsel argued that various mitigating factors warranted a downward variance, including that: (1) Rodriguez was an immigrant who became a U.S. citizen and was the first in his family to go to college; (2) Rodriguez had worked hard at a good factory job to support his family; (3) he had lost that job when the plant closed; and (4) he was experiencing serious financial difficulties when he was pressured into committing the offenses by a work supervisor (one of the confidential sources) so he could repay a debt.

When defense counsel mentioned the many letters of support for Rodriguez that counsel had submitted, the district court indicated it had not received the letters and took a recess to read them. After reading the letters, the district court

made the following statement:

> Mr. Rodriguez, you're very lucky you have very good friends. You have friends who have gone the extra mile for you and shown you their support by writing these letters, asking me to be lenient with you.
>
> My problem is that I think that Congress has an absolute right to set guidelines for sentencings. And while you may very well have fallen under the influence of a particular individual who was your superior at work, the Chief Justice of the Supreme Court could come to me and say "if you can set up a transaction I will do great for you" and I couldn't do it. And I not only couldn't do it, I wouldn't do it. The fact that you were able to do it is not good. Means that you have some familiarity with people who do this sort of thing. And the fact that you were able to successfully do it and not just talk the talk, like so many people on the street, shows that maybe you're not exactly the person that these people that are writing the letters believe you to be.

The district court explained that because Rodriguez did "not get the benefit of the safety valve," the court "couldn't go below 60 months even if I wanted to, and I don't think it's appropriate to go below 70 months, so I will not agree with that."

Defense counsel then pointed out that Rodriguez had to approach two people before he found the cocaine the confidential source wanted and only knew those two people because they all lived in the same small town. The district court stated, "I understand what you're saying. I don't think that diminishes the fact that he knew." The district court heard from Rodriguez, who apologized for his crimes. The district court then stated that it had "considered the statements of all

8

the parties, the presentence report which contains the advisory guidelines and the statutory factors," and imposed the 70-month total sentence.

In context, the district court's statement that Congress "had the absolute right to set guidelines for sentencings" does not indicate that the district court considered the guidelines range to be presumptively reasonable. Rather, the record as a whole indicates that the district court considered the § 3553(a) factors, of which the advisory guidelines range was just one, and concluded that a 70-month sentence was appropriate given the particular circumstances of Rodriguez's case.

To the extent Rodriguez argues that the district court gave "too much weight" to the sentencing guidelines, we find no reversible error. A district court does not abuse its discretion when it attaches "great weight" to a permissible factor. Gall v. United States, 552 U.S. 38, 56-59, 128 S. Ct. 586, 600-02 (2007); see also United States v. Pugh, 515 F.3d 1179, 1191-92 (11th Cir. 2008) ("[A] district court's unjustified reliance on any one Section 3553(a) factor may be a symptom of an unreasonable sentence," but attaching great weight to a factor does "not necessarily make a sentence unreasonable."). We do not second guess the weight the sentencing court gives any given factor "as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented."

United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010).

Here, the district court did not rely solely or unjustifiably on the advisory guidelines range. The district court considered many § 3553(a) factors, including the characteristics of the defendant and the circumstances of the crime. To the extent the district court gave more weight to the sentencing guidelines, the district court was within its discretion.

**AFFIRMED.**